FILED
2014 Jul-11  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TERESSA DAWN REID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-00691-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

The plaintiff, Teressa Dawn Reid, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Reid timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Reid was fifty years old at the time her application was filed, and she has a high school education. (Tr. at 37-38.) Her past work experiences include semiskilled employment as a dispatcher, inventory clerk and stocker. (Tr. at 37.) Ms. Reid claims

that she became disabled on July 2, 2009,[1] due to stroke, a spot on her brain, arthritis, depression, and breast lumps. (Tr. at 13, Doc. 13 at 2. )

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

---

[1] The Plaintiff originally alleged her disability onset date to be March 29, 2007, but moved to amend the date at the hearing. The motion was granted by the ALJ. (Tr. at 13.)

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that

burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ determined that Ms. Reid has not engaged in substantial gainful activity since the alleged onset of her disability, as amended. (Tr. at 15.) According to the ALJ, Plaintiff's cervical and lumbar degenerative joint disease; fibromyalgia; mood disorder, (NOS or not otherwise specified) with features of anxiety and depression; residuals of stroke; and personality disorder, (NOS with borderline and antisocial features) are considered "severe" based on the requirements set forth in the regulations. (*Id.*) The ALJ determined that Plaintiff's polydrug dependence, in remission; breast lumps; hypertension; and migraine headaches are non-severe impairments. (Tr. at 17.) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18.) The ALJ did not find Ms. Reid's allegations to be totally credible, and she determined that the Plaintiff has the residual functional capacity "to perform light work as defined in 20 CFR 416.967(c) with no climbing ladders, ropes, or scaffolds. She is limited to simple work and no more than casual and nonintense interaction with others." (Tr. at 20, 33.)

According to the ALJ, Ms. Reid is unable to perform any of her past relevant work, she is an "individual closely approaching advanced age," and she has "at least a high school education," as those terms are defined by the regulations. (Tr. at 37-38.) The ALJ determined that "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 38.) She found that Ms. Reid has the residual functional capacity to perform a partial range of light work. (*Id.*) Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 202.14 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as gate tender, carwash attendant, and egg packer. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since July 2, 2009, the amended alleged onset date." (Tr. at 39.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to

apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Ms. Reid alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ failed to present her RFC determination

in the format required under the Social Security Rules and failed to adequately address each area of functioning – particularly postural functioning – on a function-by-function basis. (Doc. 13 at 10.) Second, Plaintiff contends that the ALJ's RFC determination was inappropriate because it "lacked any input from a medical consultant" and was "without regard to important objective findings." (*Id.*)

### A.    Did the ALJ Provide an Adequate Function-By-Function Analysis

Social Security Ruling 96-9p defines an RFC assessment as "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities." SSR 96-9p, 1996 WL 374185 (July 2, 1996). The functions of light work are:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).  In her determination, the ALJ discussed Ms. Reid's claims, history, daily activities, and medical records.  (Tr. at 20-37.)  She then discussed Ms. Reid's impairments and subjective complaints and determined that the evidence in the record indicated that Ms. Reid had an RFC that allowed her to perform light work with certain limitations.  (*Id.*)  The ALJ then made a determination that, "[g]iven the claimant's residual functional capacity, and the testimony of the vocational expert, the undersigned finds that the claimant is unable to return to her past relevant work."  (Tr. at 37.)  Only after establishing that Ms. Reid could perform light work so long as she did not have to climb ladders, ropes, or scaffolds, perform complicated work, or have more than casual and nonintense interactions with others, did the ALJ determine that other jobs exist in the national economy that Ms. Reid can perform.  (Tr. at 38.)

The ALJ's written opinion takes into account the medical and non-medical evidence in the record prior to making the RFC determination.  The purpose of the "function-by-function analysis" requirement is to ensure that the ALJ determines, based on the entire record, that the claimant is able to perform the functions required in a particular classification of work.  An "analysis of the evidence and statement that [the claimant] could perform [light] work indicate[s] how much work-related activity

[the claimant can] perform" because SSR 96-9p defines the amount and type of work-related activity required for light work. *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007). In this jurisdiction, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted). A review of the ALJ's RFC determination indicates to the court that the ALJ did consider Ms. Reid's medical condition as a whole in making her RFC determination and, therefore, fulfilled the requirement of a function-by-function analysis. *Castel v. Commissioner of Social Security*, 355 Fed. Appx. 260, 263 (11th Cir. 2009).

The Plaintiff further argues that the ALJ's RFC lacks requisite specificity because "it contains terms which are vocationally unquantifiable." (Doc. 13 at 6). The Plaintiff argues that because limitations are not expressed "in a fraction or percentage of the eight hour work day" and "'[c]asual and nonintense' [is] not expressed in terms of time but rather degree," the RFC is not an adequately specific function-by-function analysis. However, in regard to the Plaintiff's physical RFC, the

ALJ determined that she was capable of light work "with *no* climbing ladders, ropes, or scaffolds." (Tr. at 20)(emphasis added). It is clear that the ALJ determined that the Plaintiff can perform all activities described as light work in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but she can never climb ladders, ropes, or scaffolds. It is not necessary for the ALJ to say that Plaintiff can perform light work for eight hours but can climb ladders, ropes, or scaffolds for zero hours.

Plaintiff is correct that the qualification of "casual and nonintense interaction with others" is a degree of interaction rather than an expression of time. However, the Plaintiff's ability to interact with others is not conducive to expression by a fraction or percentage of the eight-hour workday. If the ALJ expressed the Plaintiff's limitation in such a way, it would imply the Plaintiff has to work in solitude except for whatever percentage of the eight-hour workday that the ALJ determined. This type of finding would not adequately explain the ALJ's RFC determination. The ALJ's opinion adequately represented the degree to which the Plaintiff can tolerate interaction with others.[2] Accordingly, the ALJ's RFC fulfilled the requirement of a function-by-function analysis and is adequately specific in that regard.

---

[2] By stating that the Plaintiff can tolerate only "casual and nonintense" interaction with other people, the ALJ indicates that the Plaintiff is not equipped to work in an environment where she will be subjected to "intense" interaction with other people – whether that interaction occurs for five minutes or five hours during the workday.

The Plaintiff also argues that "[t]he ALJ made no attempt to address postural functioning affecting the spine as well as upper and lower extremities including push/pulling, reaching, stooping and crouching, which are particularly relevant in this instance." (Doc. 13 at 8). This line of argument is without merit. The ALJ specifically discussed issues relating to the Plaintiff's spine and upper and lower extremities on several pages of her opinion:

> On orthopedic exam, the claimant had normal range of motion of the cervical spine. Although there were earlier 2007 and 2008 imaging studies showing some degeneration, there is nothing in this review that suggested a functional limitation. She had normal range of motion of the shoulders, elbows, wrists, hands, and fingers. There was no swelling, erythema, tenderness, and no bogginess noted in any joints. Exam of the lumbosacral spine revealed that the claimant had good posture. The straight leg raising was negative to 60 degrees on the right and left. The claimant had normal range of motion of hips, knees, ankles, and feet. There was no pain, swelling erythema, tenderness, and bogginess noted in any of these joints. She can walk up and down the hall without any difficulty. She can walk on her toes and heels. She can squat and arise. Her peripheral pulses were intact.
>
> . . .
>
> [The Plaintiff] was diagnosed with joint pain low back and right hip, but no medically determinable evidence was offered to explain the diagnosis. A back x-ray was negative (Exhibit 27F16).
>
> . . .

The claimant alleged also that she has arthritis in elbows and gets shots in elbows. I found no documentation of complaints. Signs in Dr. Born's notes were negative. There is no documentation for such injections.

In terms of the claimant's alleged cervical and lumbar degenerative joint disease, the claimant testified that she has muscle spasms in her back and she has degenerative disc disease in her neck. Findings at Exhibit 13F26 and 26F64 show only mild changes in 2007 and 2008. Although there was some encroachment, later examinations showed no problems affecting the neck or upper extremities. Dr. Thomas observed the claimant has "arthritis" without referencing any specific site and without providing clinical information to support this. I have found this severe in combination with the fibromyalgia, but the report of Dr. Born, who is the only doctor to perform a physical examination with acceptable range of motion and other clinical information provided, found no problems at this site. The examination of Dr. Born in October 2009 shows on orthopedic exam, the claimant had normal range of motion of the cervical spine (Exhibit 19F). Neck problems were not alleged in the most recent QOL notes throughout 2011.

(Tr. at 25, 28, 34-35.) If the Plaintiff is attempting to argue that the ALJ was required to state in her RFC determination that the Plaintiff can push/pull, reach, stoop, and crouch frequently within an eight-hour workday, or use some sort of other magical language, the argument also is without merit. As discussed above, the ALJ specifically and clearly stated that the Plaintiff can perform the activities required to perform light work as it is defined in the Regulations, with the exception of the activities the ALJ specifically stated the Plaintiff cannot do. Accordingly, the court finds that the ALJ's

determination with respect to the Plaintiff's complaints of spinal problems and problems in her upper and lower extremities fulfilled the function-by-function analysis requirement and is supported by substantial evidence.


**B. Should the ALJ have sought a medical consultation?**

Ms. Reid asserts that the ALJ should have ordered a Medical Source Opinion (MSO) or a Medical Expert (ME) evaluation prior to making her RFC determination. Although Ms. Reid acknowledges that there is no specific requirement for a medical consultation when an ALJ makes an RFC determination, she argues that "an MSO of some kind is crucial to the analysis of functioning based on the medically determinable impairments (MDIs). . ." (Doc. 13, p. 9.)  However, the ALJ's duty to develop the record is not triggered when the record contains sufficient evidence to make an informed decision.  *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1269 (11th Cir. 2007).  At the hearing level, the Commissioner has delegated that responsibility to the ALJ, and it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity based on the entirety of the evidence presented, not just medical evidence.  *See, e.g.,* 20 C.F.R. § 404.1546(c).

The Eleventh Circuit has determined that a consultative examination must be ordered if one is needed to make an informed decision in regards to the claimant's

disability. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (*citing Ford v. Secretary of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B)). An ALJ may request a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" if the record indicates "a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established." 20 C.F.R. § 404.1519a(b)(4). However, if the record is sufficiently developed for the ALJ to make a determination, it is not necessary for the ALJ to order an additional consultative examination. *Good v. Astrue*, 240 Fed. Appx. 399, 403-404 (11th Cir. 2007). In the instant case, the ALJ had available: treatment notes from Ms. Reid's treating and examining physicians ranging from September 22, 2003 to April 19, 2011; Consultative Examination Reports from Dr. Jose Oblena, Dr. Robert Summerlin, Dr. Henry Born, and Dana Davis; a Psychiatric Review from Dr. Robert Estock; Medical Evaluations by Dr. Nancy J. Jennings and Adrianne Wright Hawkins; Mental RFC Assessments from Dr. Robert Estock and Samuel D. Williams; the Alabama Disability Determination Service Initial Claimant Contact Form; Ms. Reid's own testimony, and the testimony of the vocational expert. The record in this case was sufficiently developed to allow the ALJ to make an RFC determination without seeking an additional consultative examination.

Beyond the assertion that the ALJ should have obtained an MSO, the Plaintiff asserts that the ALJ "omitted" X-ray findings dating from November 2007 and April 2008 "on the basis that this evidence predated the amended onset date." (Doc. 13 at 9). However, the ALJ did not "omit" the X-ray evidence, in fact, she referred to it specifically in her RFC discussion. The ALJ stated, "On orthopedic exam, the claimant had normal range of motion of the cervical spine. Although there were earlier 2007 and 2008 imaging studies showing some degeneration, there is nothing in this review that suggested a functional limitation." (Tr. at 25). The ALJ's decision to rely on the more recent examination does not constitute "omission" of evidence and is within the ALJ's prerogative.

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d); *see Langley v. Astrue*, 777 F. Supp. 2d 1250, 1253 (N. D. Ala. 2011). In *Langley*, Judge Guin provided an in-depth discussion of prior Eleventh Circuit law and concluded that "the law of this Circuit does not require[] an RFC from a physician" for an ALJ to be able to make an RFC determination. 777 F. Supp. 2d at

1258.  Judge Guin noted that "the Eleventh Circuit has implicitly refused to [require a medical RFC]." *Id.* (*citing Green v. Social Security Administration*, 223 Fed. Appx. 915 (11th Cir. 2007).  The Eleventh Circuit held that medical evidence from the claimant's physicians - even though that evidence did not contain a PCE or RFC assessment - was "sufficient to support the ALJ's finding that the claimant could perform light work." *Green*, 223 Fed. Appx. at 923-24.  Because the ALJ had before her a complete record with sufficient medical and non-medical evidence, she was under no obligation to seek a further medical opinion, and this court finds that the ALJ's determination was supported by sufficient evidence.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Reid's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

DONE this 11th day of July, 2014.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE